# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | |
| | : | |
| v. | : | No. 1254 C.D. 2014 |
| | : | Submitted: October 6, 2015 |
| The Real Property And Improvements | : | |
| Known As 12534 Chilton Road | : | |
| Philadelphia, PA 19154 | : | |
| | : | |
| Appeal of: Patricia Schwartz | : | |

BEFORE:    HONORABLE DAN PELLEGRINI, President Judge
                     HONORABLE ROBERT SIMPSON, Judge
                     HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                                    **FILED: November 2, 2015**

In this statutory appeal, Patricia Schwartz (Wife) asks whether the Court of Common Pleas of Philadelphia County (trial court) erred in granting the forfeiture petition of the Commonwealth of Pennsylvania (Commonwealth) seeking the forfeiture of the real property and improvements known as 12534 Chilton Road, Philadelphia (subject property) under the act commonly known as the Controlled Substances Forfeiture Act[1] (Forfeiture Act). Wife argues the trial court erred in: (1) failing to find she was an innocent owner of the subject property pursuant to 42 Pa. C.S. §6802(j); and, (2) concluding the forfeiture of the subject property would not constitute an excessive fine in violation of Article I, Section 13 of the Pennsylvania Constitution and the Eighth Amendment to the U.S.

---

[1] 42 Pa. C.S. §§6801-6802.

Constitution.  Upon review, we vacate and remand on Wife's innocent owner defense.

## I. Background

In February 2004, the Commonwealth filed a petition for forfeiture of the subject property requesting that it be forfeited and transferred to the custody of the Philadelphia District Attorney's Office pursuant to the Forfeiture Act.  The Commonwealth amended its forfeiture petition in December 2008.

In December 2013,[2] the trial court held a hearing on the forfeiture petition.  At the hearing, the Commonwealth presented the testimony of three police officers.  Wife, represented by counsel, testified on her own behalf.  At the conclusion of the hearing, the trial court granted the Commonwealth's forfeiture petition from the bench.

Shortly thereafter, Wife filed a motion for post-trial relief.  After a hearing on Wife's post-trial motions, during which Wife presented an expert appraisal report for the subject property, the trial court issued an order confirming its grant of the forfeiture petition.  The trial court's order included footnotes explaining its rationale for rejecting Wife's innocent owner defense as well as Wife's assertions that the forfeiture of the subject property constituted an excessive fine under Article I, Section 13 of the Pennsylvania Constitution and the Eighth Amendment to the U.S. Constitution.  The trial court further stated the

_____

[2] The parties' briefs do not explain the five-year delay between the filing of the amended forfeiture petition and the hearing.  A review of the trial court's docket shows the hearing was "moved" or "continued" numerous times during that period.  Reproduced Record at 2a.

2

Commonwealth met its burden of proving a nexus existed between the subject property and the unlawful activity. Wife filed a notice of appeal to this Court.

The trial court directed Wife to file a concise statement of the errors complained of on appeal pursuant to Pa. R.A.P. 1925(b), which she did. The trial court subsequently issued an opinion pursuant to Pa. R.A.P. 1925(a). Based on the evidence presented and its credibility determinations, the trial court made the following findings.

On November 11, 2008, at approximately 10:20 a.m., Officer Thomas Rola was working as a Philadelphia police officer. His tour of duty took him to the 12000 block of Chilton Road. Certified Record (C.R.), Tr. Ct. Forfeiture Hr'g, Notes of Testimony (N.T.), 12/2/13, at 6-7. Officer Rola and his partner, Officer Myers, went to 12534 Chilton Road, and set up surveillance. N.T. at 7. Officer Myers approached the subject property and knocked on the door. Id. A white male later identified as Charles Schwartz (Husband) answered the door. Id. They engaged in a conversation, and Officer Myers handed $20.00 to Husband. N.T. at 7-8. Husband entered the subject property, exited a short time later and handed four pills to Officer Myers. N.T. at 8.

At that time, Officer Rola obtained a search warrant. Id. Officer Rola and members of Squad 11 in the Narcotics Field Unit executed the warrant on the subject property. Id. There, they observed Husband lying on a couch in the basement. Id. He was taken into custody and was positively identified. Id. Recovered from the property were hundreds of prescription drugs and narcotics

3

pills, including Diazepam pills, Percocet pills, OxyContin pills and Endocet pills. N.T. at 9-11. The majority of the recovered contraband was found in the basement on a coffee table. N.T. at 11. On that table, police observed numerous pill bottles and what they believed to be controlled substances. Id. Further, there were pills in almost every room in the house searched. N.T. at 11-12. There were pills found in the front bedroom, in one of the other bedrooms and the basement. Id. All the prescription bottles were in Husband's name. N.T. at 12. The recovered alleged narcotics were submitted to the chemical lab for testing and determined to be controlled substances. N.T. at 17.

On October 27, 2003, Officer Jeffrey Galazka was working as a Philadelphia police officer. N.T. at 25. His tour of duty took him to the 12000 block of Chilton Road. Id. There, based on information he received, Officer Galazka and fellow Narcotics Officers Hayes and Betts met with a confidential informant (CI). N.T. at 26. The CI dialed the cell phone number 215-300-####. Id. Officer Galazka was with the CI during the conversation; the CI had a brief drug related conversation with a male. Id. They were advised to go to a predetermined location. Id. Surveillance was set up at the subject property, at which time Husband was observed exiting the house. Id. Husband was followed to the predetermined location. Id. There, Officer Galazka and the CI approached Husband. Id. The CI handed $120.00 in prerecorded buy money to Husband in exchange for three green pills, marked 80 on one side, and OC on the other, alleged OxyContin. N.T. at 26-27. The CI immediately turned over the pills to Officer Galazka. N.T. at 27.

Later that day, Officer Galazka and his fellow narcotics teammates observed Husband exiting the subject property and entering a vehicle. Id. He was stopped by two other police officers. Id. Husband was arrested and the officers recovered from his person a large pill bottle containing the following items: 4 Percocets, 336 OxyContin, 146 Valiums, 76 Xanax, 33 Lomotil pills, 7 grams of marijuana, and 64 grams of powder Cocaine. N.T. at 22-23. Also recovered was $8,929.00, including the prerecorded buy money of $120.00. N.T. at 23.

The officers then executed a search warrant on the subject property. Id.; N.T. at 27. The officers recovered 154 Valium pills, 841 Lomitil pills, 120 Lonox pills, and 40 Butalbital pills from the subject property. N.T. at 27. Recovered from the second floor front bedroom was a Bell Atlantic bill in Husband's name with the Chilton Road address, along with three pieces of mail with the same name and address, a driver's license in Husband's name with that address, new and unused clear zip-lock packets, a black scale, and a silver cell phone, later verified as the phone the CI called earlier that day. N.T. at 28. Recovered from the first floor were a .357 Magnum handgun and various rounds of ammunition. Id. Two vehicles were also confiscated. Id. All the narcotics, drugs, currency and paraphernalia were found inside the subject property. Id. Officer Galazka explained the officers found pills in almost every room. N.T. at 32. The house was filled with pills "everywhere." Id. Some pills were out in the open, while some were stored in various locations in the house. N.T. at 33.

Husband has two separate certified convictions for illegal drug dealing. N.T. at 35. Husband was charged with felony possession with intent to

deliver (PWID) violations on two different occasions.  Id.  In 2003, he was charged with felony PWID.  See C.R., Ex. A, Criminal Docket, CP-51-CR-0000964-2008. He pled guilty to that PWID charge.  Id.  The maximum allowable penalty for PWID of Schedule I/II narcotics is $250,000.  For a second or subsequent offense, however, the maximum allowable penalty is doubled.  See Section 15 of the Controlled Substance, Drug, Device and Cosmetic Act (Drug Act).[3]  In 2008, Husband was charged with a felony PWID and was found guilty.  See C.R., Ex. A, Criminal Docket, CP-51-CR-0001573-2008.

The trial court did not credit Wife's testimony based on "blatant inconsistencies," and it "did not find Wife credible at all."  Tr. Ct., Slip Op., 9/25/14, Finding of Fact No. 21; N.T. at 80.  Further, the trial court found that, by her own admission, Wife was present in her home when the officers executed the search warrant in 2003.  Id.; N.T. at 58-59.  The trial court also found the police officers personally informed Wife that Husband was arrested for illegal drug dealing.  Id.; N.T. at 48, 50.  Additionally, the trial court found that Wife admitted she did not take any steps to prevent Husband from engaging in any further illegal drug dealing activity after his 2003 conviction.  F.F. No. 22; N.T. at 57, 68, 79.

The trial court explained that in her concise statement of the errors complained of on appeal, Wife asserted the trial court erred in: (1) failing to find Wife was an innocent owner pursuant to 42 Pa. C.S. §6802(j); (2) finding the Commonwealth presented sufficient evidence to meet its burden of establishing a nexus between Husband's criminal activity and the subject property such that

---

[3] Act of April 14, 1972, P.L. 233, as amended, 35 P.S. §780-115.

6

forfeiture was legally proper; and, (3) failing to find the forfeiture of the subject property constituted an excessive fine in violation of Article I, Section 13 of the Pennsylvania Constitution and the Eighth Amendment to the U.S. Constitution.

Responding to these issues, the trial court explained that, to sustain its initial burden of proof, the Commonwealth was required to establish that a nexus existed between the property and the alleged illegal activity. Commonwealth v. Fidelity Bank Accounts, 631 A.2d 710 (Pa. Cmwlth. 1993). In order to sustain its burden, the Commonwealth need not produce evidence directly linking the seized property to illegal activity; it must, however, produce more than a mere suspicion of a possible nexus. Commonwealth v. Marshall, 698 A.2d 576 (Pa. 1997). Because a civil forfeiture hearing for real property is an *in rem* proceeding, the Commonwealth must show that the property itself has offended the law. Id.

The trial court further explained that the Commonwealth need not prove the forfeiture claimant or anyone involved with the property was guilty of any crime beyond a reasonable doubt. Commonwealth v. 542 Ontario Street, 989 A.2d 411 (Pa. Cmwlth. 2010) (en banc). Rather, the Commonwealth need only prove, by a preponderance of the evidence, a nexus existed between the unlawful activity and the property subject to forfeiture. Commonwealth v. $1,920.00 US. Currency, 612 A.2d 614 (Pa. Cmwlth. 1992).

When the Commonwealth petitions for forfeiture of a house as the result of illegal drug activity, the question becomes whether the evidence shows the dwelling was used to facilitate illegal drug activities. Commonwealth v. Schill,

643 A.2d 1143 (Pa. Cmwlth. 1994). Further, in deciding whether to grant a forfeiture petition, courts may consider the amount of illegal narcotics found as a result of a search of the property, as well as the existence of drug paraphernalia and instruments of distribution, such as vials, present at the property. Id.

The trial court stated, in determining whether a nexus exists, Pennsylvania courts grant forfeiture of property where the Commonwealth shows the property owner facilitated drug sales or stored drugs and paraphernalia at his property. 542 Ontario Street (forfeiture granted where police observed numerous controlled purchases at the property and two search warrants yielded drugs and paraphernalia in the property); Commonwealth v. Smothers, 920 A.2d 922 (Pa. Cmwlth. 2007) (forfeiture granted where confidential informant and police officers purchased drugs from the property). Further, in a forfeiture proceeding, the Commonwealth may use circumstantial evidence to prove a nexus. See, e.g., Commonwealth v. McJett, 811 A.2d 104 (Pa. Cmwlth. 2002).

Here, the trial court explained, the Commonwealth established there was a nexus between the subject property and the illegal drug activity by a preponderance of the evidence. The subject property was clearly used to facilitate the sale of illegal drugs. Similar to 542 Ontario Street, where the Commonwealth proved the property owner facilitated drug sales or stored drugs and controlled substances at his property, the narcotics officers here observed drug transactions take place near and around the subject property on more than one occasion. In addition, police recovered hundreds of prescription and other pills from inside the

8

subject property. Further, Husband has two certified convictions in connection with this matter for illegal drug dealing.

Evaluating the totality of the circumstances, the trial court stated, the evidence presented by the Commonwealth clearly shows illegal drug sales were facilitated through the use of the subject property. The record reflects Husband sold illegal drugs from the subject property and stored massive quantities of illegal drugs and controlled substances in the property. Thus, the trial court found Husband used the subject property to facilitate the commission of illegal drug transactions. As a result, the trial court found the Commonwealth met its burden of establishing a nexus between the subject property and the illegal activities.

Next, the trial court explained, once the Commonwealth sustains its burden of establishing a nexus between the property forfeited and the alleged illegal activity, it becomes the property owner's burden to establish an affirmative defense, such as the innocent owner defense. To prove an innocent owner defense, a forfeiture claimant must show: (1) she is the owner of the property; (2) she lawfully acquired the property; and, (3) it was not unlawfully used or possessed by her or the unlawful use was without her knowledge or consent. 42 Pa. C.S. §6802(j). Further, the absence of such knowledge or consent must be reasonable under the circumstances. Id.

Here, the trial court determined, Wife did not establish an innocent owner defense by a preponderance of the evidence. The basic thrust of her argument was that she had no knowledge of the drug transactions taking place

9

inside her residence. But, the trial court stated, the record in no way supported that contention. First, Husband was previously arrested and convicted of felony PWID in 2003, providing Wife with effective notice of the unlawful activities taking place on her property.

Further, even after police executed a search warrant at her residence and in her presence in 2003, and Husband was subsequently convicted of illegal drug dealing, the record lacked any evidence that Wife took any proactive measures or steps to show her lack of consent to the illegal activity. Wife did not leave or vacate the subject property, and she did not restrict or otherwise limit Husband's access to the property. As such, the trial court stated, the record did not support Wife's contention that she was unaware of (or otherwise did not consent to) the drug activity taking place on her property.

In addition, after hearing her testimony, the trial court found Wife not credible. The trial court stated it was Wife's burden to show she did not know of or otherwise consent to Husband's presence (and the alleged unlawful activities) on the property. She did not sustain that burden. The trial court explained the record lacked evidence suggesting Wife called police to have Husband removed from the property. Further, there was no record evidence suggesting Wife even sent Husband a certified letter requesting that he vacate the subject property. The record does, however, reflect Wife did absolutely nothing to stop the unlawful drug activity that she clearly knew of, from occurring on her property. For all these reasons, the trial court stated, Wife did not establish she was unaware that Husband conducted illegal drug sales on or through the use of the subject property. Rather,

10

the trial court stated the record showed, at best, Wife turned a blind eye to Husband's illegal conduct on the subject property and allowed it to continue.

Moreover, the trial court observed Wife's demeanor and behavior during her testimony, and it stated it simply did not believe her testimony because of blatant inconsistencies. Thus, the trial court found Wife's arguments meritless and unsupported by the record. As such, it concluded that Wife did not establish an innocent owner defense under 42 Pa. C.S. §6802(j).

As to Wife's claim that the forfeiture constituted an excessive fine, the trial court stated, under the Excessive Fines Clause of the Eighth Amendment and Article I, Section 13 of the Pennsylvania Constitution, forfeiture of property cannot be grossly disproportionate to the gravity of the offense. United States v. Bajakajian, 524 U.S. 321 (1998); see also 542 Ontario Street. The trial court stated that in Commonwealth v. 5444 Spruce Street, 832 A.2d 396 (Pa. 2003), the Pennsylvania Supreme Court explored Bajakajian and enumerated factors by which to assess the "gravity of the offense," each of which is limited to the conduct of the defendant. The factors are: (1) the penalty imposed as compared to the maximum penalty allowed; (2) whether the violation was isolated or part of a pattern of unlawful behavior; and, (3) the harm resulting from the crime charged.

Here, the trial court explained, based on an application of these factors, forfeiture of the subject property would not violate Wife's constitutional rights. To that end, the fair market value of the subject property was approximately $150,000. Over 1,000 prescription pills, drugs and other

11

barbiturate/narcotics were recovered from the subject property. Given the large quantity of drugs and other controlled substances recovered, as well as the fact that Husband was charged with drug-related felonies on multiple occasions, the trial court found the underlying violation was not an isolated event or incident. Rather, the underlying violation formed a part of a pattern of systemic unlawful behavior on Husband's part in the form of continuous illegal drug dealing in the surrounding community through use of the subject property.

The trial court stated Husband was charged with felony PWID on two occasions. In 2003, he was charged with felony PWID. He was found to be in possession of Schedule I/II narcotics. He pled guilty to that PWID charge. The maximum allowable penalty for PWID such narcotics is $250,000. For a second or subsequent offense, however, the maximum allowable penalty is double that amount. See 35 P.S. §780-115. In 2008, Husband was charged with a felony PWID and was found to be in possession of such narcotics. The trial court stated the maximum allowable fines/penalties involved here well exceeded the purported fair market value of the subject property.

Moreover, the trial court stated, the damage and harm to the community resulting from the underlying violation was quite considerable. This type of illicit behavior puts not only Husband's neighbors in harm's way, but also the officers investigating his unlawful activity and serving warrants in connection with that illegal conduct. For all these reasons, the trial court determined the real property forfeited was not grossly disproportionate to the gravity of the offense.

12

Finally, the trial court explained, forfeiture of the property did not violate the Excessive Fines Clause because Wife did not sustain her burden of establishing an innocent owner defense. The trial court stated that the fact that Wife was not charged with or otherwise convicted of a Drug Act violation was irrelevant to its excessive fines analysis. The trial court stated the Commonwealth established by a preponderance of the evidence that Wife either knew of or consented to Husband's illegal activities. Thus, she failed to prove an innocent owner defense. Moreover, the record clearly showed, at best, Wife turned a blind eye to Husband's illegal conduct on the subject property and allowed it to continue. Thus, forfeiture of the subject property was not tantamount to an excessive fine and thus did not run afoul of the Excessive Fines Clause.

For all these reasons, the trial court recommended that this Court affirm its decision granting the Commonwealth's forfeiture petition.

## II. Issues

On appeal,[4] Wife argues the trial court erred in: (1) failing to find she was an innocent owner of the subject property pursuant to 42 Pa. C.S. §6802(j); and, (2) concluding the forfeiture of the subject property would not constitute an excessive fine in violation of Article I, Section 13 of the Pennsylvania Constitution and the Eighth Amendment to the U.S. Constitution.

---

[4] Our review of a forfeiture appeal is limited to determining whether the trial court's findings of fact were supported by substantial evidence and whether it abused its discretion or committed an error of law. Commonwealth v. 1997 Chevrolet, 106 A.3d 836 (Pa. Cmwlth. 2014) (en banc), appeal granted, 120 A.3d 993 (Pa. 2015).

13

### III. Discussion
### A. Innocent Owner Defense
### 1. Contentions

Wife first asserts the trial court erred in failing to find she was an innocent owner under 42 Pa. C.S. § 6802(j). She argues that, even if a nexus between the alleged drug sales and the subject property is established, Wife had no knowledge of this problem. See R.R. at 78a-114a. Moreover, Wife contends the she never explicitly or implicitly consented to such illegal activities at her property. She argues there is simply no evidence that might indicate she ever had any knowledge concerning the alleged drug sales. Thus, Wife never consented to any drug sales at the subject property.

Wife argues that here, as in Commonwealth v. 1997 Chevrolet, 106 A.3d 836 (Pa. Cmwlth. 2014) (en banc), appeal granted, 120 A.3d 993 (Pa. 2015), the trial court did not adhere to the instructions of our Supreme Court in Commonwealth v. $2,523.48 U.S. Currency, 649 A.2d 658 (Pa. 1994), when it ignored evidence of all the circumstances surrounding Wife's actions, or lack of actions, in determining if she acted reasonably. Wife asserts the record shows there are no circumstances that would have made it reasonable for the trial court to conclude Wife had actual knowledge of Husband's illegal activity, and that she consented to the violations of the Drug Act. Thus, Wife maintains, her lack of consent to the drug sales at issue was certainly reasonable under the facts and circumstances here. Wife contends forfeiture of the subject property is simply not warranted because she is, as a matter of law, an innocent owner.

14

Wife contends that in $2,523.48 U.S. Currency, the Pennsylvania Supreme Court stated, "evidence which establishes knowledge of illegal drug activity does not automatically establish consent to that activity." Id. at 661. Further, an individual need not take any affirmative steps to stop the illegal use of her premises in order to establish an innocent owner defense. "Property owners are not required to perform heroic, vigilante or police actions in order to stop drug activity on their property." Id. Thus, Wife argues, even if an owner knows of illegal activity, that fact does not automatically establish consent to the conduct. Id.

Wife asserts she was not required to take any affirmative steps to prohibit the illegal conduct here. Wife argues she took the only reasonable course of action she could under the circumstances. The perpetrator of the offenses was her husband. Wife worked during the day and was not home when he engaged in criminal activity on the occasions at issue here. See R.R. at 79a. Nevertheless, Wife did what she could to ensure drug activity was not taking place in her home. See R.R. at 88a-89a; 90a; 92a; 112a-14a. Wife argues it would be unreasonable under the circumstances to expect the property owner to take any affirmative action to stop the alleged drug sales at her property. This is not a case where Wife observed illegal activities at the location. Nor did the alleged illegal conduct continue for an extended period. See R.R. at 87a-88a; 90a; 100a; 104a-06a.

Wife maintains this Court recently addressed this issue in 1997 Chevrolet, stating: "An owner does not have to become an *ad hoc* law enforcement officer to demonstrate lack of consent." Id. at 868 (citing $2,523.48 U.S.

15

Currency, 649 A.2d at 660).  Here, Wife contends, there is simply no evidence to establish that she consented to any of Husband's criminal activity.

Wife further asserts that, while the trial court found she lacked credibility in her assertions that she knew nothing of the criminal activity Husband engaged in, that does not end the inquiry.  As this Court recently held, "a negative credibility finding does not constitute positive evidence that can support a finding of fact."  1997 Chevrolet, 106 A.3d at 868-69 (citations omitted).  "It is problematic that a person can be deprived of her home because she is unable to prove a negative.  This is why the Forfeiture Act requires the owner's lack of consent to be 'reasonable under the circumstances presented.'"  Id. at 869 (quoting 42 Pa. C.S. §6802(j)).  "It is not enough simply to disbelieve the property owner; the trial court must identify the circumstances that make it reasonable to infer that the property owner had actual knowledge and did consent to the violation of the Drug Act."  Id. at 870.

The Commonwealth responds that the trial court correctly found that Wife was not an innocent owner.  It argues that Wife bore the burden of proving her innocent owner affirmative defense, and she did not carry this burden.  The Commonwealth contends Wife was present when a search revealed thousands of pills all over her house in 2003 and when her husband pled guilty to PWID in connection with his 2003 arrest.  Yet, she did nothing to stop him from selling schedule II narcotics from their home.  Husband was arrested again in 2008 and convicted of PWID because he was still selling drugs from the home.

The Commonwealth maintains the record supports the trial court's findings that Wife knew of the illegal drug sales on the subject property that she and Husband owned and did nothing to stop them. Therefore, the trial court's legal conclusion was appropriate. No relief is due.

Here, the Commonwealth notes, Wife does not contest there was a nexus between the subject property and Husband's illegal drug sales, and the record shows the Commonwealth established the requisite nexus. In both 2003 and 2008, police found thousands of pills inside the home, and pills were in almost every room. N.T. at 11, 30, 32. In addition, in the 2008 sale, Husband sold drugs directly from the house. N.T. at 7-8. Thus, the burden shifted to Wife to prove she was an innocent owner. It was her sole burden to convince the fact finder that she either did not know of, or did not consent to, the illegal drug activity on her property, and her lack of knowledge or consent was reasonable under the circumstances. 42 Pa. C.S. §6802(j). Here, Wife testified she had no knowledge of Husband's drug dealing, but the trial court did not find her credible. Thus, she failed to carry her burden.

In a footnote, the Commonwealth recognizes that a majority of this Court recently stated that disbelief of a forfeiture claimant who testified she had no knowledge of drug activity is insufficient to allow a fact-finder to conclude she did have knowledge. 1997 Chevrolet. However, the Commonwealth respectfully disagrees with this statement, noting that it filed a petition for allowance of appeal to the Supreme Court (which was granted in July), and it reserves its right to seek further review of this issue. 1997 Chevrolet, 106 A.3d at 891 (Simpson, J.,

17

dissenting) ("I also struggle to understand the Majority's pronouncement that a negative credibility finding does not constitute positive evidence of Ms. Young's knowledge. Because Ms. Young had the statutory burden of proof on this issue, the Majority pronouncement makes no sense. Once the trial court rejected her testimony, Ms. Young could not carry her burden."). In any event, the Commonwealth contends, there was additional, affirmative evidence here that Wife knew about Husband's drug dealing.

Moreover, the Commonwealth asserts, the evidence established there were thousands of pills inside the house, the pills were in almost every room of the house, Wife lived in and cleaned the house, and she was present during the 2003 search of the house and when Husband pled guilty to PWID in connection with the 2003 arrest. N.T. at 11, 30, 32, 45, 62, 72, 73. In addition, when the trial judge asked Wife, "And so that was 2003 I would imagine when you found out [that Husband was selling drugs]," to which Wife responded "yes." N.T. at 53. Thus, the Commonwealth argues, there was ample evidence that Wife knew of the drug activity.

Despite this knowledge, the Commonwealth maintains, Wife did nothing to stop Husband from dealing drugs out of their house. She did not tell Husband to stop after he was arrested in 2003 or pled guilty to PWID. N.T. at 79. She did not even question Husband about his drug dealing in the house in 2003 or 2008. N.T. at 54 -55, 68. In light of the quantity of drugs in the house and the fact that they were spread throughout almost every room, the Commonwealth argues, Wife's inaction was unreasonable. See $2,523.48 U.S. Currency, 649 A.2d at 661

("[W]e hold that for a property owner to establish that he did not consent to illegal activity taking place on his property, the actions he took to discourage that activity must have been reasonable in light of the surrounding circumstances.").

## 2. Analysis

Section 6802(j) of the Forfeiture Act contains the so-called "innocent owner" defense. It states:

> **(j) Owner's burden of proof.--**At the time of the hearing, if the Commonwealth produces evidence that the property in question was unlawfully used, possessed or otherwise subject to forfeiture under section 6801(a) or 6801.1(a), the burden shall be upon the claimant to show:
>
> > (1) That the claimant is the owner of the property or the holder of a chattel mortgage or contract of conditional sale thereon.
> >
> > (2) That the claimant lawfully acquired the property.
> >
> > (3) That it was not unlawfully used or possessed by him. In the event that it shall appear that the property was unlawfully used or possessed by a person other than the claimant, then the claimant shall show that the unlawful use or possession was without his knowledge or consent. Such absence of knowledge or consent must be reasonable under the circumstances presented.

42 Pa. C.S. §6802(j).

Recently, in <u>1997 Chevrolet</u>, an <u>en</u> <u>banc</u> panel of this Court considered the same trial judge's rejection of a forfeiture claimant's innocent owner defense in a case where the Commonwealth sought forfeiture of real property in Philadelphia based on drug sales occurring in and around the property.

19

There, the property owner was a woman whose adult son sold marijuana from the property. The trial court rejected the owner's claims that the use of her property to sell drugs was without her knowledge or consent. In so doing, it expressly rejected the owner's testimony as not credible, opting instead to credit testimony from police officers. Specifically, the trial court credited the police officers' testimony that the owner was present when they executed a search warrant, explained they were there because her son was selling drugs, provided her with a copy of the search warrant, called her son and asked that he turn himself in, and showed her drug paraphernalia and drugs collected during their search of her home.

Despite the trial court's finding, on appeal, a majority of this Court reversed and remanded on the trial court's rejection of the property owner's asserted innocent owner defense. More particularly, this Court stated, while the trial court rejected the owner's testimony that she did not know of her son's unlawful conduct, a "negative credibility finding does not constitute positive evidence that can support a finding of fact. Stated otherwise, the factfinder's disbelief of [the owner's] statement that she had no knowledge of her son's activity does not allow the factfinder to draw the contrary conclusion, i.e., that she did have knowledge." 1997 Chevrolet, 106 A.3d at 868-69 (citations omitted). Additionally, as to the owner's alleged consent, this Court held the trial court

> did not follow our Supreme Court's specific instruction in $2,523.48 U.S. Currency, 649 A.2d at 662, that '[a]ll of the circumstances surrounding the property owner's actions, or lack of action, must be considered in determining if they were reasonable.' Instead, the trial court held that the single way for [the owner] to demonstrate a lack of consent was by ejecting her son from the house.

20

Id. at 869.

This Court also rejected the Commonwealth's argument that the owner had to invite police to her home to prove her lack of consent, citing our Supreme Court's observation that, "the statute does not require on its face that a landowner take *any* affirmative steps to stop the illegal use of his premises." Id. at 870 (quoting $2,523.48 U.S. Currency, 649 A.2d at 660) (emphasis in original). Additionally, this Court stated:

> The Forfeiture Act places the burden on the property owner to prove a negative, i.e., lack of knowledge or lack of consent. The legislature eases this impossible burden somewhat by adding that a lack of knowledge or consent must be 'reasonable' under the circumstances. It is not enough simply to disbelieve the property owner; the trial court must identify the circumstances that make it reasonable to infer that the property owner had actual knowledge and did consent to the violation of the Drug Act.

Id.

In addition, this Court stated that where the trial court rejected the owner's testimony based on what it deemed "blatant inconsistencies," the trial court was required to identify those inconsistencies in its opinion. Id.

Here, in rejecting Wife's innocent owner defense, the trial court stated:

> [Wife] has failed to establish an innocent owner defense by a preponderance of the evidence. The basic thrust of her argument is that she had no knowledge of the drug transactions taking place inside her residence. But the record in no way supports that contention. First, [H]usband was previously

21

arrested and convicted on felony PWID charges in 2003, providing her with effective notice of the unlawful activities taking place on her property. By the same token, even after the police executed a search warrant at her residence and in her presence in 2003 and [H]usband was convicted subsequently for illegal drug dealing, the record is devoid of any evidence that [Wife] had taken any proactive measures or steps to demonstrate her lack of consent to this illegal activity. [Wife] did not leave or vacate the [subject] property thereafter, and she did not restrict or otherwise limit [H]usband's access to the property. As such, the record does not in any way support [Wife's] contention that she was unaware of (or otherwise did not consent to) the drug activity taking place on her property. Second, after hearing her testimony, the Court found her not credible.

The burden is on [Wife] to demonstrate that she did not know of or otherwise consent to [Husband's] presence (and the alleged unlawful activities) on the [subject] property. Here, she has not sustained that burden. There is no evidence contained in the record suggesting that [Wife] called the police to have [H]usband removed from the [subject] property. There is no evidence contained in the record suggesting that [Wife] even sent him a certified letter requesting that he vacate the [subject] property. The record does, however, reflect that [Wife] did absolutely nothing to stop the unlawful drug activity that she clearly knew of, from occurring on her property. For all the foregoing reasons, she failed to establish that she was unaware that he was conducting illegal drug sales on or through the use of their property. The record shows, at best, that [Wife] turned a blind eye to [H]usband's illegal conduct on the property and allowed it to continue. Moreover, this Court observed [Wife's] demeanor and behavior during her testimony. This Court simply did not believe her testimony due to blatant inconsistencies.

Tr. Ct., Slip Op. at 11-12.

Because the trial court here lacked the benefit of this Court's recent articulation of the principles discussed in detail above concerning application of

the innocent owner defense, 1997 Chevrolet, a remand is appropriate in order to allow the trial court an opportunity to reevaluate the evidence presented in accordance with these principles. To that end, based on 1997 Chevrolet, the trial court cannot base its decision that Wife did not know of or consent to the unlawful activities on the subject property on a negative credibility finding.

In 1997 Chevrolet, this Court rejected the trial court's finding that the sole way for a property owner to show lack of consent was to eject a drug-dealing family member from the home. Thus, the trial court's statement here that Wife's failure to exclude Husband from the subject property or to leave the subject property herself demonstrated her consent to the unlawful activities is not viable in light of 1997 Chevrolet. Further, the trial court's statements regarding Wife's failure to take steps to limit Husband's access to the subject property are problematic in light of the fact that, unlike in 1997 Chevrolet, Wife was not the sole owner of the subject property; rather, Husband and Wife owned the subject property as tenants by the entireties. R.R. at 32a.

In von Hofe v. United States, 492 F.3d 175 (2d Cir. 2007), a case this Court discussed with approval in 1997 Chevrolet, the forfeiture claimants, a husband and wife, challenged a federal trial court's decision that ordered forfeiture of their home. There, police executed a search warrant for the home, which yielded, among other things, 65 marijuana plants. The husband and wife were convicted of various criminal offenses under state law. The federal government then brought an *in rem* forfeiture action against the home. The only crime to which the wife pled guilty was possession of a controlled substance, while her

23

husband pled guilty to manufacturing and distributing such substances. Ultimately, the Second Circuit agreed with the federal trial court that the forfeiture of the husband's interest in the home did not violate the Excessive Fines Clause, but it reversed the forfeiture judgment as to his wife. As to the couple's joint ownership of the property, the Second Circuit stated: "Saying [the wife] allowed her husband to engage in illegal activity on the property … must be taken in the context of [the couples'] joint tenancy. [The husband] did not need his wife's permission to use the property; joint ownership of [the home] entitled [the husband] to use the property as if he were the sole owner." 492 F.3d at 189.

Here, similar to von Hofe, Husband and Wife owned the subject property as tenants by the entireties. Based on our review of the trial court's opinion, it does not appear the trial court properly considered the type of ownership at issue here in its analysis of whether Wife consented to the unlawful activities on the subject property, which further warrants a remand.

Based on the foregoing, we vacate the trial court's decision to the extent it rejected Wife's innocent owner defense and remand for reevaluation of Wife's claimed innocent owner defense in light of the principles set forth in 1997 Chevrolet and von Hofe.

### B. Excessive Fine Challenge
### 1. Contentions

Wife also maintains the forfeiture of her real property constitutes an excessive fine in violation of Article I, Section 13 of the Pennsylvania Constitution and the Eighth Amendment to the U.S. Constitution. Here, she argues, the

24

Commonwealth obtained forfeiture of her real property based on evidence of two separate drug transactions that Husband engaged in five years apart at times when she was not present. This evidence simply fails to establish, by clear and convincing proof, any pattern of conduct existed involving the sale of drugs from the subject property, let alone the existence of a "significant relationship" between the property sought and the drug offenses. Wife argues that taking her property under these circumstances is, as a matter of law, an excessive fine.

Wife contends she is facing eviction from her home and the loss of her 50 percent share of a $150,000 house based on criminal conduct engaged in solely by Husband. Thus, she argues forfeiture of the subject property is an excessive fine, as a matter of law, under the facts here.

The Commonwealth counters that the trial court's finding that the forfeiture was not an excessive fine was proper. The offenses at issue were serious: Husband was convicted twice of PWID, he was selling schedule II narcotics, and he had thousands of pills in the home. While Wife did not sell drugs herself, she was culpable because she allowed Husband to continue selling drugs from the house even after she knew that he was doing so.

### 2. Analysis

In 1997 Chevrolet, which was decided after the trial court's decision here, an *en banc* majority articulated several new principles for an excessive fine analysis, which will be reviewed by the Supreme Court in the near future. To the extent these new principles are controlling law, vacation and remand on Wife's excessive fines claim is also necessary.

## IV. Conclusion

For all the foregoing reasons, the trial court's order is vacated. This matter is remanded to the trial court for proceedings consistent with the foregoing opinion. We leave to the thoughtful discretion of the trial court whether to accept or refuse additional evidence and argument.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania     :
     :
       v.          :    No. 1254 C.D. 2014
     :
The Real Property And Improvements   :
Known As 12534 Chilton Road      :
Philadelphia, PA  19154       :
     :
Appeal of: Patricia Schwartz      :

## **O R D E R**

**AND NOW**, this 2nd day of November, 2015, the order of the Court of Common Pleas of Philadelphia County is **VACATED** and this matter is **REMANDED** in accordance with the foregoing opinion.

Jurisdiction is relinquished.

_____
ROBERT SIMPSON, Judge